We're going to move now to Appeals 24-1581 and 24-1582 United States v. Edward Brown and Ms. Garst will begin with oral argument from you on behalf of the appellant. Ms. Garst Thank you, Your Honors. May it please the Court, my name is Hannah Garst. I'm here on behalf of Edward Brown. Mr. Brown's conviction in this case should be vacated because the government failed to prove beyond a reasonable doubt that Mr. Brown knowingly possessed child pornography on his phone. The only question here before the Court is did Mr. Brown know that these images were on the phone? Now, the government's argument to uphold Mr. Brown's conviction primarily relies on circumstantial evidence, and that circumstantial evidence provided no basis for the jury to reasonably infer knowledge that he knowingly possessed the images. Now, the evidence at trial demonstrated that Mr. Brown lacked any sort of access control over the images. There was no direct evidence of knowing possession. All the witnesses, including two forensic experts, testified that there was no evidence that Mr. Brown had ever come into contact with these images. He never knew that the images were on the phone. He never knew about the auto-caching function. There was no evidence that he could see or even access these images on a simple flip phone without some sort of forensic program, and no programs were found in his possession or on the phone. Now, the experts agreed that at some point someone had opened these images on the phone, but Mr. Brown wasn't the only owner of this phone, and the ownership is highly relevant to knowledge and knowing possession. The government has to prove that Mr. Brown himself knew that he possessed these images. We did not challenge the fact that these images were on the phone. We challenged knowledge. Now, the first owner had this phone starting in 2021. The forensic evidence showed that he or she connected to Bluetooth, used the phone for a year. Now, this first owner couldn't have been Mr. Brown because Mr. Brown was incarcerated on his prior case. So Mr. Brown obtains this phone in June 2022. At that point, he begins using the phone. Now, if the prior owner had opened these images on the phone, as the experts stated, the images would have been automatically cached. They would have automatically been copied. The images themselves were not on the phone. What was on the phone is a thumbnail, and the purpose of that is if you visit the image again, it allows you to pull up the website or the image quicker. So the actual images weren't there, but the thumbnail of them were. Both forensic experts testified that it was highly unusual that there was no data associated with these pictures. The government couldn't prove when these were accessed, when they were viewed, nothing. There was no information whatsoever along with these images. Now, it's interesting. So as this court knows, Mr. Brown, he's a prior sex offender, and his testimony was that when he got to the halfway house, it was at that point that he obtained his phone. Now, the government produced no evidence as to how he even received this phone. Did he receive it from the halfway house? We don't know. This was a phone, though, he wasn't supposed to have. Well, that is the narrative that the government presented, that he was not supposed to have this phone. Now, this phone initially, this was his original phone that he obtained at the halfway house. While at the halfway house, this phone broke, which was confirmed by the forensic evidence, the Celbright report, which showed that it stopped being in use as a phone around September 2022. So he stopped using it at that point. He, in his interview with Officer Kerner, stated at that point, he then obtained a new phone. But while at the halfway house, he was allowed to keep the old phone. And he stated in his interview that he was using the old phone because he had music downloaded on it. So he's listening to music on this old flip phone. Now, he then proceeds to go into supervised release. And in his interview, he repeatedly stated that he did not know that he could not keep this other phone. He was aware that he could only have one working phone, one phone that he was actually using as a cell phone. He was aware of that, and that's what he said in the interview. But he stated over and over, I didn't know I couldn't have the other device. When Officer Bice came during supervised release to his home, the phone was not hidden. It was on his bed. It was in the open. The government, they put forward this narrative that he hid the phone, that he hid this. But there's no evidence that he hid these images. The phone was out in the open. And in the interview itself, he stated over and over, I didn't know I couldn't have this other device. There was no term of supervised release that prohibited him from having this other phone. If it was a rule of probation, there was nothing that he signed stating that he knew that there was this rule that he could only have one device, not just one working phone. So we would contend that that in and of itself, even the government's narrative, would not provide a basis for the jurors to conclude that he knowingly possessed images on a phone that had multiple owners. What about the propensity evidence, though, in Federal Rule of Evidence 414? It's not tabula rasa that the case is being presented to the jury. They also know about this previous conviction. Correct, Your Honor. And we didn't contest. 414 does allow his prior conviction in. However, the propensity evidence, it allows the conviction to be taken into account. But it doesn't relieve the government of its burden. It is something that could support, but you still have to have some evidence of knowledge. And that's our position. And as the Court is aware, the Seventh Circuit really hasn't dealt with this issue. But the other circuits who have, have really said that even when a defendant has exclusive possession, which we don't have in this case because he was not the only owner. But even when a defendant has exclusive possession of a computer or a device, evidence of storage of child pornography images in the hard drive of a computer without more is insufficient to sustain a conviction or sentence for knowing possession. Exclusive possession cases in which convictions have been upheld, the government has presented additional evidence of the defendant's knowledge and control of the actual images. The government did not present that here. And that I quoted from Moreland, which is in our brief. The government did not present that here. There is no evidence whatsoever of any access and control. And again, that was by two forensic experts, including the government agent who initially ran the Celebrate and Axiom. Would you like to reserve the remainder of your time, Ms. Garza? I would, Your Honor. Thank you very much. Thank you very much. Thank you. Ms. Boyle, we'll now move to you for argument on behalf of the government. Thank you, Your Honors. May it please the Court, Counsel, my name is Catherine Boyle on behalf of the United States. Mr. Brown fails to meet the nearly insurmountable burden of showing that no rational juror could have found him guilty of possession of child pornography. The ample evidence in this case, taken all together, shows that the jury's verdict was reasonable. The issue here, as Ms. Garza points out, is did he knowingly possess the child pornography, and did he know that the materials depicted child pornography? The evidence at trial shows that he did. Mr. Brown was on supervised release for distribution and possession of child pornography offenses. He was required to disclose and register any phone that he had, and he was only supposed to have one phone, to probation during this time. Instead, Mr. Brown concealed the phone from probation over four months, and that phone had, conservatively speaking, 75 thumbnail images of child pornography on it. Ms. Boyle, it sounds like the images themselves could not be evaluated for purposes of when or if they had been accessed. Is that because any metadata is stripped off of the images? Might they have found themselves on that phone without the metadata as a result of how those were being circulated or file-shared? Your Honor, it's not entirely clear why there was no metadata with the images showing when they were last accessed. That is potentially for a few reasons. I think it was Special Agent Beneschewitz who testified that cell phone extractions are sometimes imperfect. You know, depending on the version of the data extraction software used, you might not get metadata for that reason. I don't think that's – he didn't testify that was the only reason you might not have it, but that's certainly one reason. And I wanted to address, actually, in connection with that, a point made by defense counsel. She said both Special Agents testified that it was very unusual not to have timestamp data with these sorts of thumbnail images. And I believe Agent Beneschewitz, with Homeland Security Investigations, did say that that was unusual, but then went on to explain how it might have happened. But I don't believe Agent Benderitis said that, and he said occasionally you wouldn't see timestamp information with these images. So just as a factual point of clarification. So the number of 75 images, this is not a situation where you see one or two images, thumbnail images, in a cache on a phone. This is 75 images. This shows that these images were not accessed by mistake or accident. This is deliberate. There's also – apparently this particular phone on which the images were located was not Internet capable. Is that correct? I believe the phone was no longer in – it was not Internet capable, and it was also not on network following September 2022, but it was capable of receiving images from Bluetooth and other mediums, which is, we think, the explanation for why on November 27, 2022, you see the same phone when it was only in Mr. Brown's possession, accessing file names with images that are potentially suggestive of child pornography. Does the record reflect whether or not Mr. Brown had Wi-Fi? The record doesn't reflect whether he had Wi-Fi, Your Honor. We know that there are names of files on the phone, and those files did not apparently contain the pictures that are on the basis of the conviction. Am I right? That's correct, Your Honor. We do know they were images, which is also interesting in light of Mr. Brown's allegation that – Do we know when they were placed on the phone, that notation? So we know that they were either viewed or downloaded on November 27, 2022, on the morning, and we know that – we're not sure if they were just downloaded or if they were viewed at that point as well, but we know that's when there was action on the phone in connection with these files. And he had possession of the phone on that date? He did, and he doesn't – there's no argument that anybody else had possession of the phone. He lived alone. He was the only one who had it. So you're asking the jury to infer from the fact he downloaded two fairly obvious child pornography files that he's probably the guy who also downloaded the pictures. Is that your train of thought? We're not asking the jury to infer that based on that alone, but we think under the totality of the evidence that is a piece that the jury could consider. It's relevant and probative. Yes. He's still continuing to pursue viewing child pornography images. He has a phone that happens to have 75 images of child pornography in the cache. We think that those pieces fit together. So over this time period, over this four months, Mr. Brown has the phone. He doesn't disclose it until probation, and this is despite explicit instructions from probation as Probation Officer Bice testified, saying that you're only supposed to have one phone. Mr. Brown was aware of this. Mr. Brown actually admitted he knew he was only supposed to have one phone during his interview with law enforcement. You're supposed to register that phone with probation. You're also supposed to tell probation if you switch phones. You're supposed to tell them how you disposed of the old phone. So this was really hammered during Mr. Brown's conversations with probation. You are supposed to have one phone device. Tellingly, Mr. Brown knew that any phone he reported to probation would be subject to regular searches. So that is, we think, another reason this phone was not reported. Courts have held over time that this type of concealment is evidence of guilt. And even after the phone was discovered, Mr. Brown continued to lie because he feared what might be found on it. He made various contradictory statements saying that the phone was inoperable even though it was charging at his bedside and on. He said the screen was broken and it wasn't. And Probation Officer Bice, just showing the phone's operability, said it even rang when he was trying to transfer it to an evidence locker at the probation office in Urbana. But these 75 thumbnail images are not the only evidence of guilt. We talked about the files accessed in November 2022 earlier. That disproves the claim that Mr. Brown was only using the phone for listening to music. These are image files that he was accessing with suggestive titles. And the fact that those files are not on the phone either is in line with what we're seeing here. Mr. Brown apparently either views child pornography and deletes it or views it and does not save it. This is in line with his self-characterization as being computer savvy and that he said himself that he would hide child pornography if it were found on his phone. It's also interesting during his interview, Mr. Brown speculates that if any images are there, they must be in the shadow memory, which is exactly where they were found. Other statements during the law enforcement interview also supported the jury's guilty verdict. He made the contradictory assertions regarding his possession of the phone and its functionality. He said that he made statements about his own proclivities, his interest in petite women. The law enforcement officer asks him if he's interested in younger women, and he doesn't say no. He just says that's not a safe word because he's worried that he will again get in trouble for his possession of child pornography. So the jury heard that interview? The jury heard that portion of the interview, yes, Your Honor. He also discusses – they heard a portion of the interview discussing how younger females were always attracted to him. He specifically mentions a neighbor girl in a little skirt. He acknowledged fantasies about petite women. So all of these things are contributing to the jury's picture of what's going on here. And the jury was also permitted to consider under Rule 414 evidence of his prior convictions for distribution and possession of child pornography for any relevant purpose, including propensity. If Your Honors have no further questions, the government will rest on the arguments in our briefing. No, thank you, Ms. Boyle. Thank you, Your Honor. Ms. Garst, we'll go back to you now for rebuttal argument. Thank you, Your Honor. Just a couple things. First is regarding the file names. The forensic experts testified there were no images whatsoever connected to any of those file names. According to the government's own theory, if images had been accessed, it would be in the cache. There was nothing, no pictures, nothing whatsoever associated with these file names. And these file names were embedded with a bunch of music files. So the mere fact that they're a file that could be something, we don't know. There's no evidence that it was ever accessed. And again, this is the FBI's own Cellbrite extraction. And as far as correcting the record, the two forensic experts that I was referring to is Benesiewicz and Boekel. The agent was not, he was not an expert. As for the interview, I think that the, it's interesting to read it in full, and understanding that the government has picked and chosen where they want Mr. Brown to say yes, okay, right. The quotations that they are giving to Mr. Brown do not accurately reflect his responses. And so I just asked the court to review those. As far as shadow memory, Mr. Brown, and shadow memory is not a term of art. It's not something that was used by the experts. It's his own explanation as to where this could be. This was after hours of trying to figure out how could there be 75 images on a phone. I never saw them. I have no idea how they would be there. Well, maybe they're in a shadow memory. That in and of itself does not prove that Mr. Brown is this computer savvy. And many of the things that he spoke with, may I finish? Many of the things that he talked about as far as petite women, those were all precipitated by the agent who was interviewing him, not by Mr. Brown himself. Thank you, Ms. Garst. Thank you, and Ms. Boekel, case is taken under advisement.